```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

CHARLES RICOTTONE,                  :

                Petitioner,         :   04 Civ. 6524 (JSR)(HBP)

    -against-                       :   REPORT AND
                                        RECOMMENDATION
WARDEN CRAIG APKER,¹                :

                Respondent.         :

-----------------------------------X
```

PITMAN, United States Magistrate Judge:

TO THE HONORABLE JED S. RAKOFF, United States District Judge,

I. Introduction

Petitioner has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging (1) the United States Bureau of Prison's ("BOP's") method of calculating "good time" credit earned by an inmate pursuant to 18 U.S.C. § 3624(b) and (2) the BOP's December 2002 reinterpretation of 18 U.S.C. §§ 3621(b) and 3624(c) concerning an inmate's eligibility for placement in a Community Corrections Center ("CCC") (now known as Residential Reentry Centers).

---

¹Pursuant to Fed.R.Civ.P. 25(d), Craig Apker, Warden at FCI Otisville, is automatically substituted as respondent in this action for his predecessor Frederick Menifee.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II. Facts

The facts relevant to this petition can be briefly stated.

Petitioner was convicted in the United States District Court for the Eastern District of New York on April 16, 2002 of three counts of conspiracy to collect credit by extortionate means, in violation of 18 U.S.C. § 894(a)(1) (Declaration of Stephanie J. Scannell, dated Nov. 1, 2004 ("Scannell Decl."), Ex. A at 4, Ex. N at 1). Petitioner was sentenced to a forty-eight month term of imprisonment, to be followed by a three-year term of supervised release (Scannell Decl. Ex. N at 2-3). Petitioner began serving his sentenced on June 4, 2002[2] (Scannell Decl. Ex. N at 2). According to the United States Bureau of Prisons web site, petitioner was released from prison on June 30, 2005 (U.S. Bureau of Prison Home Page, follow Inmate Locator link for Charles Ricottone, http://www.bop.gov (last visited January 30, 2008)). Petitioner is currently serving his term of supervised release.

---

[2] At the time petitioner commenced serving his sentence, he had already earned 101 days credit toward his sentence as a result of a period of pretrial detention (Scannel Decl. Ex. B at 2).

2

III. Analysis

    A. Calculation of
       Good Time Credits[3]

The first aspect of the petition arises out of the BOP's interpretation of 18 U.S.C. § 3624(b)(1) which provides:

> Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree. Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

Petitioner argues that good time credit should be calculated by simply multiplying the sentence imposed (in years)

---

[3] Even though petitioner has already been released from custody this aspect of his petition is not moot. If petitioner did serve an excessive period of incarceration, some relief would be available through a reduction of the period of supervised release. Sash v. Zenk, 428 F.3d 132, 133 (2d Cir. 2005)

3

by 54 and subtracting the product from the sentence imposed.  If petitioner's methodology is used, an inmate would earn good time for periods of incarceration he will never serve.  For example, if this simple multiplication calculation is used and assuming that good time is earned at the maximum rate, an inmate serving a ten-year sentence will reduce his sentence by one year after serving approximately 81 months.  If total good time for such an inmate were calculated by multiplying the sentenced imposed (ten years) by 54 days per year, the inmate would receive good time credit for the tenth year of his sentence, even though he will have been released before that year.

The BOP does not use the simple methodology suggested by petitioner and instead calculates good time by awarding a maximum of 54 days of good time for each year of sentence served. See 28 C.F.R. § 523.20.  The BOP has devised a fairly complex formula which awards good time only for periods of incarceration actually served; in substance the BOP awards a maximum $0.148^{4}$ days of good time for each day actually served (see Scannell Decl. Ex. D).  The BOP's formula results in a slightly longer period of actual incarceration over the methodology suggested by petitioner.  For example, assuming good time is earned at the maximum rate, a sentence of one year and one day would result in

---

[4]This figure is derived by dividing the maximum good time allowance (54 days) by the number of days in a year.

4

an actual period of incarceration of 319 days under the BOP's formula (Scannell Decl., Ex. D at 1-47). Under the simpler formula advocated by plaintiff, the period of actual incarceration would be 312 days.

The BOP's methodology was expressly approved as a reasonable interpretation of Section 3624(b) in Sash v. Zenk, supra, 428 F.3d 132, rehearing denied, 439 F.3d 61 (2d Cir. 2006), which held that the Section 3624(b) need not be interpreted in accordance with the rule of lenity and that the BOP's interpretation of the statute was reasonable. Since Sash is controlling authority, the first aspect of the petition must be denied.

B. The BOP's December 2002 Reinterpretation of 18 U.S.C. Sections 3621(b) and 3624(c)

The second aspect of the petition arises out of a change in the BOP's interpretation of Sections 3621(b) and 3624(c) of Title 18. Section 3621(b) provides, in pertinent part:

> **(b) Place of imprisonment**. -- The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering --

5

**(1)** the resources of the facility contemplated;

**(2)** the nature and circumstances of the offense;

**(3)** the history and characteristics of the prisoner;

**(4)** any statement by the court that imposed the sentence --

> **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> **(B)** recommending a type of penal or correctional facility as appropriate; and

**(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another . . . .

Section 3624(c) provides:

**(c) Pre-release custody**. -- The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

Prior to December 2002, the BOP interpreted Section 3621(b) as taking precedence over Section 3624(c) and as includ-

ing CCC's, or half-way houses, within the definition of "penal or correctional facilit[ies]."  Thus, "'before December 2002, it was possible for . . . inmates to serve their entire terms of "imprisonment" in CCCs.'"  Supplementary Information Published in Connection with Amendment to 28 C.F.R. § 570, 70 Fed. Reg. 1659, 1659 (Jan. 10, 2005), quoting Supplementary Information Published in Connection with Proposed Amendment to 28 C.F.R. Part 570, 69 Fed. Reg. 51213, 51213 (Aug. 18, 2004).  See Pinto v. Menifee, 04 Civ. 5839 (MHD), 2004 WL 3019760 at *2 (S.D.N.Y. Dec. 29, 2004); Zucker v. Menifee, 03 Civ. 10077 (RJH), 2004 WL 102779 at *2 (S.D.N.Y. Jan. 21, 2004).  In December 2002, however, BOP's Office of Legal Counsel concluded that its "decades-long policy," United States v. Arthur, 367 F.3d 119, 120-21 (2d Cir. 2004), was wrong, and that Section 3624(c) was a limit on the discretion granted by Section 3621(b).  The BOP's Office of Legal Counsel concluded that an inmate could be designated to a CCC only in connection with pre-release programming for the lesser of six months or ten percent of the inmate's sentence after the deduction of good time credits (the "12-20-02 Policy").

In response to procedural challenges concerning the manner in which the 12-20-02 Policy had been implemented, the BOP formally amended 28 C.F.R. Part 570 in February 2005 to reflect the 12-20-02 Policy.

7

Petitioner commenced this action in July, 2004, claiming that the 12-20-02 Policy violates both the Constitutional prohibition against ex post facto laws and was promulgated in violation of the procedural requirements of the Administrative Procedure Act. On July 10, 2006, the United States Court of Appeals for the Second Circuit concluded that both the 12-20-02 Policy and the regulations formally promulgated in February 2005 were improper exercises of the BOP's rule-making authority. Levine v. Apker, 455 F.3d 71 (2d Cir. 2006). Specifically, the Court of Appeals held that the 12-20-02 Policy and the February 2005 regulations' "ten-percent/six-month categorical limitation on the time period in which the BOP will consider inmates for community confinement exceeded the agency's rulemaking authority pursuant to the 'clear parameters' of 18 U.S.C. § 3621(b)." Sorbello v. Laird, 06 Civ. 948 (JG), 2007 WL 675798 at *1 (E.D.N.Y. Feb. 28, 2007), quoting Levine v. Apker, supra, 455 F.3d at 87.

Because petitioner has been released from BOP custody, the Court cannot issue any Order that would effect when he could be considered for CCC placement or address the criteria applicable to the determination of petitioner's eligibility for CCC placement. Nevertheless the action is not moot. Petitioner is still serving a term of supervised release. If he succeeds in establishing an injury, "'effectual relief'" could be granted

through a reduction of his term of supervised release. Levine v. Apker, supra, 455 F.3d at 77.

However, although there is relief that is theoretically available to petitioner, this Court cannot grant that relief. Reduction in petitioner's term of supervised release is a remedy that can only be granted by the Court that sentenced petitioner, in this case, the United States District Court for the Eastern District of New York. 18 U.S.C. § 3583(e); United States v. Lussier, 104 F.3d 32, 34 (2d Cir. 1997) ("subsection 3583(e)(2) . . . permits the sentencing court" to reduce the conditions of supervised release (emphasis added)); United States v. Morales, 45 F.3d 693, 701 (2d Cir. 1995) (subsection 3583(e)(2) grants power to "sentencing court" to modify a term of supervised release). Thus, there is no relief that this Court can grant.

IV. Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that the petition be denied.

In addition, since petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253. To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved

in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that the petition should be dismissed.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 445 (1962).

V. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. See also Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl Street, Room 1340, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750,

New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
February 1, 2008

Respectfully submitted,

/s/ Henry Pitman
HENRY PITMAN
United States Magistrate Judge

Copies mailed to:[5]

Mr. Charles E. Ricottone
Reg. No. #39563-053
FCI Otisville
P.O. Box 1000
Otisville, New York 10963

Richard Rosberger, Esq.
Assistant United States Attorney
Southern District of New York
86 Chambers Street
New York, New York 10007

---

[5]As noted in the text, petitioner has been released from FCI Otisville. Petitioner has never advised the Court of any new address, and, therefore, this report and recommendation is being sent to his last known address.